IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MONCRIEF OIL INTERNATIONAL, INC. | § § § | |
| v. | § § | CIVIL ACTION NO. _____ |
| OAO GAZPROM; GAZPROM MARKETING & TRADING USA, INC.; PACE GLOBAL ENERGY SERVICES, LLC; OOO GAZPROM EXPORT, f/k/a OOO GAZEXPORT; and C.C. PACE RESOURCES, INC. | § § § § § § § | |

## DEFENDANT OAO GAZPROM'S NOTICE OF REMOVAL

1.      Defendant OAO Gazprom files this Notice of Removal to compel arbitration under the Convention on the Enforcement of Foreign Arbitral Awards (the "Convention"), 9 U.S.C. § 201, et seq.  The lawsuit being removed is *Moncrief Oil International, Inc. v. OAO Gazprom, et al.*, Cause No. 017-229664-08, in the District Court of Tarrant County, Texas. Removal to this Court is proper because it is the district and division within which the action is pending.  28 U.S.C. § 1446(a).

2.      Gazprom is removing this case because Plaintiff Moncrief Oil International, Inc. very recently disclosed that it is seeking over *$1.3 billion* in damages against Gazprom based on its alleged interest in a Russian gas field, the "Y-R Field."  Moncrief claims it obtained that interest through a series of agreements between Moncrief and a Gazprom subsidiary culminating in a Cooperation Agreement that contains a mandatory arbitration provision subject to the Convention.  Moncrief's new $1.3 billion damages theory directly contradicts statements Moncrief made to this Court six years ago—when Moncrief was seeking to avoid arbitration and obtain a remand—that its claims do not depend on the Cooperation Agreement, seek damages

based on an interest in the Y-R Field, or relate to the Y-R Field.  By re-injecting the Y-R Field into this case, Moncrief has forced Gazprom to once again remove and request arbitration.

3.      This lawsuit was preceded by a 2005 lawsuit brought by Moncrief in the United States District Court for the Northern District of Texas.   In that federal lawsuit before the Honorable Terry Means, Moncrief accused Gazprom and two of its subsidiaries of breaching several contracts—including the Cooperation Agreement—under which Moncrief claimed an ownership interest in the Y-R Field.   Moncrief alleged that Gazprom refused to confirm Moncrief's contractual interest in the Y-R Field and caused Moncrief damages of "several billion dollars."   Ex. E.1 at 11, 1st Am. Federal Compl. ¶ 35.   The Northern District dismissed Moncrief's lawsuit for lack of personal jurisdiction, and the Fifth Circuit Court of Appeals affirmed.  *See Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309 (5th Cir. 2007).

4.      Having failed in its bid to sue Gazprom for breach of contract, Moncrief recast its contract claim as tort claims and filed this lawsuit in state court on April 3, 2008.  These new tort claims featured allegations that during discussions with Moncrief in 2004 and 2005, Gazprom misappropriated trade secrets relating to the "down-stream" benefits that Moncrief proposed as part of its efforts to confirm its purported interest in the Y-R Field.  Ex. E.2, 2d Am. Pet. ¶¶ 20, 22.  Moncrief claimed the alleged trade secrets related to analysis of the North American natural gas market and regasification facilities, including Occidental Petroleum's unbuilt regasification facility in Ingleside, Texas.  *Id*. ¶ 22.  According to Moncrief, it and Occidental formed a joint venture to build and operate the Ingleside facility and sell natural gas to U.S. consumers; Occidental allowed Moncrief to participate in the venture in exchange for an "option agreement" to purchase part of Moncrief's purported interest in the Y-R Field.  *Id*. ¶ 20.  Moncrief alleged that Gazprom interfered with this joint venture and caused Moncrief "hundreds of millions of

dollars in damages." *Id.* ¶ 40.  In response to discovery requests, however, Moncrief stated that

it also would seek economic damages for "[c]onversion of Moncrief's interest in the Y-R Field,"

and "[i]nterference with Moncrief's ability to enforce its interest in the Y-R Field."  Ex. E.3

Moncrief's Response to Requests for Disclosure 7 (May 29, 2008).

     5.     Gazprom removed this case on June 26, 2008 under the Convention on grounds

that Moncrief's tort claims depended upon, and sought to recover damages for, Moncrief's

alleged interest in the Y-R Field arising from the Cooperation Agreement.  The case was again

assigned to Judge Means.  Faced with removal and the possibility of arbitration, Moncrief

disowned reliance on the Cooperation Agreement and disclaimed any intent to seek damages for

the Y-R Field.  Moncrief declared that its "claims do not refer to, touch upon, or even rely on the

Cooperation Agreement; its existence is completely irrelevant."  Ex. E.4, Moncrief's Br. in Resp.

to Defs.' Mot. to Dismiss 13.  Moncrief also provided the declaration of its Chairman and CEO,

Richard W. Moncrief, stating that Moncrief sought damages of approximately $110 million,

which were "independent of and separate from Moncrief's damage claim related to its interest in

the Y-R Field.  Moncrief has been forced to pursue those separate damages related to its interest

in the Y-R Field in a German court through a German subsidiary."  Ex. E.5, Decl. of Richard W.

Moncrief ¶ 24.  In addition, Moncrief rejected any connection between its claims and its "option

agreement" with Occidental to transfer part of its interest in the Y-R Field, stating: "Moncrief's

claims in this lawsuit do not depend in any way on the option agreement or relate to the Y-R

Field."  Ex. E.6, Pl.'s Sur-Reply in Opp. to Defs.' Cross Mots. to Dismiss 4.

     6.     Relying on Moncrief's "own representations," the Court remanded the case to

state court.  Ex. E.7, Order Granting Motion to Remand 17-18 (Dec. 19, 2008).  The Court

cautioned, however, that its ruling "does not create for Moncrief a second opportunity to litigate

its interest in the Y-R Field and the alleged breach of the Cooperation Agreement." *Id.* at 16. The Court also observed that Moncrief had made references to the Y-R Field and Cooperation Agreement as "part of a general factual background," and stated that "[t]o the extent that Moncrief would have such references take on legal significance, the issues related to its interest in the Y-R Field under the Cooperation Agreement were decided in its first suit against Gazprom." *Id.* at 17.   Finally, the Court found that Moncrief's representations that it was not relying on the Cooperation Agreement to recover an interest in the Y-R Field "should be given preclusive effect in any additional litigation between these parties." *Id.* at 18.

7.      After the case was remanded at the end of 2008, the parties spent the next five years litigating the issue of personal jurisdiction.   Ultimately, the Texas Supreme Court affirmed the dismissal of certain claims, reversed the dismissal of others, and returned the remaining claims to the state district court.   *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142 (Tex. 2013).   The district court entered a scheduling order on March 4, 2014, and the parties began merits discovery.   It was through this recent discovery that Gazprom first learned that, notwithstanding Moncrief's previous representations and stipulations before Judge Means, Moncrief is attempting to use this lawsuit to end-run Judge Means's remand order and re-litigate its previously dismissed federal lawsuit seeking damages for its alleged loss of a contractual interest in the Y-R Field.

8.      On April 25, 2014, Moncrief served its first set of requests for production.   Of the 209 requests, 111 called for documents concerning the Y-R Field—including several requests for documents relating to the Cooperation Agreement.   Ex. E.8, Moncrief's Requests for Production of Documents to OAO Gazprom.   Among the documents requested by Moncrief are "all documents referring to or related to the Cooperation Agreement" and "performance of the

Cooperation Agreement," *id.* Requests 34, 35, all documents evidencing, referring, or relating to "any reserve reports for the Y-R Field from 2006 (on a monthly basis) to the present," "monthly sales volume reports for the Y-R Field from 2006 (on a monthly basis) to the present," and "all actual profit summaries or profit reports that evidence, refer, and/or relate to the Y-R Field from 1996 to the present," *id.* Requests 98, 102, 143.

9.      Defendants objected to Moncrief's document requests relating to the Y-R Field as irrelevant and barred by Moncrief's previous representations to this Court.  After Defendants served their objections, Moncrief moved to compel production of the Y-R Field documents on June 27, 2014.  In its motion, Moncrief argued that documents relating to its "Y-R Field interest are *highly relevant* to the claims Moncrief has asserted."  Ex. E.9, Motion to Compel 2 (emphasis added).  Moncrief asserted that the damages it could recover under its trade secret claim "are directly related to its Y-R Field interest," and claimed that the "value of the Moncrief-Occidental joint venture is at least partially dependent upon the value of Moncrief's Y-R Field interest."  *Id.* at 2, 10.  Moncrief urged that "documents and information related to the Y-R Field (and Moncrief's interest therein) are essential to a fair and just adjudication of this lawsuit."  *Id.* at 3. Moncrief did not, however, elaborate on how the Y-R Field factored into its damages claim or provide any details concerning its damages model.

10.      Three days later, on June 30, 2014, Moncrief served its responses to Gazprom's interrogatories.  In response to questions concerning the content of Moncrief's alleged trade secrets, Moncrief informed Defendants that it possessed an "undisputed ownership interest in the Y-R Field," and developed its purported trade secrets in part to realize the value of that "undisputed ownership interest."  Ex. E.10, Moncrief's Answers and Objections to Defendants' First Set of Interrogatories 2-3.  In response to Defendants' questions regarding the ways in

which they allegedly interfered with Moncrief's business dealings with Occidental, Moncrief responded: "Defendants denied Moncrief its undisputed interest in the Y-R Field notwithstanding the previous representations they made to honor Moncrief's Y-R Field interest." *Id.* at 10.  Moncrief also stated that it would provide details about its damages theory when it designated its experts on July 7, 2014.  *Id.* at 7-8.

11.     On July 2, 2014, the parties appeared before the Tarrant County District Court on Moncrief's Motion to Compel.  At the hearing, Moncrief's counsel argued that information about the Y-R Field was relevant because the purported joint venture around which the alleged trade secrets were developed involved a proposed regasification plant located in Ingleside, Texas that would process liquefied natural gas coming from the Y-R Field.  Ex. E.11, Transcript 38-40. Moncrief then argued that it intended to use data concerning the gas "output" of the field to build a damages model for its tort claims.  *Id.* at 39-40.  In light of these statements, counsel for Defendants repeatedly asked whether Moncrief was now seeking damages based on its claimed interest in the Y-R Field noting that, if true, the case was again removable to federal court.  *Id.* at 61, 66, 74.  Moncrief's counsel refused to answer.

12.     On July 9, 2014, Moncrief took the deposition of OAO Gazprom's deputy vice chairman, Alexander Medvedev.  The 280-page transcript includes 110 pages of questions about Moncrief's various agreements—including the Cooperation Agreement—concerning the Y-R Field.  Among the questions asked by Moncrief's counsel were inquiries about the development plan for the Y-R Field, the reserves in the Y-R Field, the market value of the Y-R Field, whether Moncrief performed under its agreements, the validity of the Cooperation Agreement, and whether Gazprom had approved the various agreements between Moncrief and Gazprom's subsidiary, Zapsib.  Ex. E.12, Deposition of Alexander Medvedev (July 9, 2014).  The purpose

of Moncrief's questions became clear only hours after the completion of Mr. Medvedev's deposition, when Defendants received Moncrief's Designation of Expert Witnesses and Designation of Damages via U.S. mail. *See* Ex. E.13.

13.     In its designation, Moncrief claimed damages of $1,368,200,000 for the "destruction" of the "upstream, midstream and downstream" components of its purportedly confidential plan for delivering Russian natural gas to U.S. consumers.  The vast majority of that amount—$1,230,000,000—is for the "upstream" component, which is "based upon Moncrief's option agreement[1] with Occidental (wherein Moncrief retained 25% of its initial 33% interest)." The option agreement, in turn, was premised on Moncrief's representation that it had a 1997 agreement with Zapsib concerning the ownership of the Y-R Field.  Moncrief agreed to sell 75 percent of its ownership interest in the Y-R Field arising from that agreement to Occidental in exchange for $10 million cash to Moncrief and $1 billion of investment capital to develop the field.   The remaining "midstream and downstream" damages—$138,200,000—result from expected profits from the sale of Y-R Field gas processed at the proposed Ingleside facility.

14.     In light of these disclosures, on July 24, 2014, Defendants' counsel wrote to Moncrief's counsel that Moncrief's damages claim for its interest in the Y-R Field had rendered the case removable, and requested that the parties discuss whether Moncrief wished to continue pursuing that claim in light of the clear jurisdictional implications.   Moncrief's counsel responded on July 31 that its "damages *do* necessarily flow from its interest in the Y-R Field." Ex. E.14, Letter from Marshall Searcy 2.

15.     The damages sought by Moncrief make clear that this lawsuit is nothing more than an elaborate ruse to re-litigate what Moncrief claims is its lost interest in the Y-R Field.  In

---

[1] This is the same option agreement that Moncrief falsely told this Court in 2008 it did not "depend in any way" upon.  Moncrief now depends on that agreement to the tune of $1.3 billion.

short, Moncrief seeks to recover over $1.3 billion for (1) its alleged lost ownership interest in the Y-R Field arising from its contracts with Zapsib, and (2) the lost profits from operating a regasification facility to process that Y-R Field gas and sell it to U.S. consumers.  Those claims *require* that Moncrief litigate its claimed ownership interest under its Y-R Field agreements because that interest forms the foundation for the damages element of both of Moncrief's tort claims.  Those agreements culminate in the Cooperation Agreement and require arbitration.

16.     Moncrief's obfuscation and duplicity allowed it to avoid arbitration once.  But to paraphrase Moncrief, "if [Judge Means knew] this case were about ownership of a Russian gas field, [he] would not have remanded it back to" state court.  Ex. E.15, Pl.'s Consol. Resp. to Defs.' Special Appearance and Mot. to Transfer Venue 2 (May 14, 2009).  Now that Moncrief has again revealed that this case is about nothing more than its purported contractual interest in the Y-R Field, Moncrief should be compelled to arbitrate its claims pursuant to the mandatory arbitration clause in the Cooperation Agreement.

## BASIS FOR REMOVAL

17.     The District Court has removal jurisdiction over this lawsuit under the Convention, 9 U.S.C. § 201, et seq.  The Convention sets a "low bar" for removal jurisdiction, and makes it "easy, not hard, for defendants to remove."  *Beiser v. Weyler*, 284 F.3d 665, 674 (5th Cir. 2002).  Removal of an action is proper under the Convention "at any time before the trial thereof" when "the subject matter or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention."  9 U.S.C. § 205.  Both requirements of section 205 are met in this case.  First, the subject of this lawsuit "relates to" the arbitration agreement contained in the Cooperation Agreement.  Second, the Cooperation Agreement "falls under" the Convention.

18.     The subject matter of this case "relates to" the arbitration provision in the Cooperation Agreement because Moncrief seeks to recover over $1.3 billion in damages for the loss of its alleged interest in the Y-R Field.  Moncrief's claim that it is entitled to damages for loss of that alleged interest *necessarily* arises from the Cooperation Agreement and the other, related agreements between Moncrief and Zapsib—all of which "culminat[ed] in . . . the Cooperation Agreement."  Ex. E.7 at 2.   Accordingly, the arbitration provision in the Cooperation Agreement has a direct effect on the outcome of this case because it provides a defense to Gazprom.  Moreover, the Court has removal jurisdiction under 28 U.S.C. § 1441(c) over the claims, if any, that are found not to fall within the scope of the arbitration provision.

19.     An agreement "falls under" the Convention if (1) it is a written agreement to arbitrate; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship that is considered commercial; and (4) one party to the agreement is not a U.S. citizen, or the commercial relationship has some reasonable relation with one or more foreign states.  *See* 9 U.S.C. § 202.   All of those requirements are satisfied here.  First, the Cooperation Agreement is a written agreement that contains an arbitration provision.  Ex. E.1 at 38, Cooperation Agreement ¶ 7.2.  Second, the Cooperation Agreement provides for arbitration in Russia, and the Russian Federation is a signatory to the Convention.  *Id.*; Ex. E.16, U.N. Comm'n on Int'l Trade Law: Status of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards.  Third, the Cooperation Agreement relates to a proposed commercial transaction that purportedly would have involved the provision of financing for a natural gas field.  Ex. E.1 at 32, Cooperation Agreement.  Fourth, there is no dispute that one party to the agreement, Zapsibgazprom, is not a

U.S. citizen, and that the Y-R Field is located in Russia.  Ex. E.1 at 2-3, 1st Am. Federal Compl. ¶¶ 7, 10.

20.     Gazprom is not a party to the Cooperation Agreement.  However, Gazprom is entitled to rely on the arbitration provision in the Cooperation Agreement because Moncrief relies on the terms of that agreement and related agreements to assert a $1.3 billion damages claim against Gazprom and the other defendants in this case.  *See Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)); *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 305 (Tex. 2006) (finding that when a party's "right to recover and its damages depend on the agreement containing the arbitration provision, the party is relying on the agreement for its claims").

21.     Finally, this Notice of Removal is timely filed because it is filed before the trial of this matter.  Where the subject matter of the action relates to an arbitration agreement under the Convention, "the defendant or the defendants may, *at any time before the trial thereof*, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending."  9 U.S.C. § 205 (emphasis added); *see also McDermott Int'l, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1212 (5th Cir. 1991) (noting that under the Convention, "a defendant may remove 'at any time before trial'").  Gazprom removed this action as quickly as reasonably possible after learning that Moncrief is seeking to re-inject its claim for the Y-R Field into this case to recover $1.3 billion in damages.

22.     Pursuant to Local Rule 81.1 of the Northern District of Texas, this Notice of Removal is accompanied by copies of the following:

> A.     An index of all documents that clearly identifies each document and indicates the date the document was filed in state court (Exhibit A);

      B.      A copy of the docket sheet in the state court action (Exhibit B);

      C.      Each document filed in the state court action, except discovery material, individually tabbed and arranged in chronological order according to the state court file date (Exhibit C); and

      D.      A separately signed certificate of interested persons that complies with Local Rule 3.1(c) (Exhibit D).

23.      Written notice of the filing of this Notice of Removal will be served on counsel for Moncrief, and a copy of the Notice of Removal will be filed with the Clerk of the District Court for Tarrant County, Texas.

24.      Although they do not join in this notice of removal, Defendants OOO Gazprom Export, Gazprom Marketing & Trading USA, Inc., Pace Global Energy Services, LLC, and C.C. Pace Resources, Inc. consent to this removal and have filed a separate notice of consent to the removal of this action by Gazprom.

25.      Gazprom accordingly prays that this Court take jurisdiction of this action and compel arbitration as required by paragraph 7.2 of the Cooperation Agreement.  Gazprom further prays for such other and further relief to which they may show themselves justly entitled.

Respectfully submitted,

By: */s/ Van H. Beckwith*
          Van H. Beckwith
          State Bar No. 02020150
          Ryan L. Bangert
          State Bar No. 24045446
          BAKER BOTTS L.L.P.
          2001 Ross Avenue
          Dallas, Texas 75201
          (214) 953-6500 Telephone
          (214) 953-6501 Facsimile
          van.beckwith@bakerbotts.com
          ryan.bangert@bakerbotts.com

          Michael S. Goldberg
          State Bar No. 08075800
          Edmund G. LaCour Jr.
          State Bar No. 24085422
          BAKER BOTTS L.L.P.
          910 Louisiana Street
          Houston, Texas 77002
          (713) 229-1234 Telephone
          (713) 229-1522 Telecopy
          michael.goldberg@bakerbotts.com
          edmund.lacour@bakerbotts.com

          Neal W. Adams
          State Bar No. 00874000
          Jerry D. Bullard
          State Bar No. 03323015
          ADAMS, LYNCH & LOFTIN, P.C.
          3950 Highway 360
          Grapevine, Texas 76051
          (817) 552-7742 Telephone
          (817) 328-2942 Facsimile
          nwa@all-lawfirm.com
          jdb@all-lawfirm.com

ATTORNEYS FOR OAO GAZPROM; OOO GAZPROM EXPORT; GAZPROM MARKETING & TRADING USA, INC.; PACE GLOBAL ENERGY SERVICES, LLC; and C.C. PACE RESOURCES, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of August, 2014, a true and correct copy of the foregoing was served on Moncrief's counsel of record via certified mail, return receipt requested:

Marshall M. Searcy, Jr.
Michael D. Anderson
Derek W. Anderson
Kelly, Hart & Hallman, P.C.
201 Main Street, Suite 2500
Fort Worth, Texas 76102

*/s/ Van H. Beckwith*
Van H. Beckwith